IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROADWAY PINE BRANDS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOY STORAGE WORLD (TSW) et al., )<br>)<br>Defendants. ) | Case No. 2:21-cv-01665-NR<br><br>Judge J. Nicholas Ranjan |

**Defendant's Second Motion to Dissolve the Preliminary Injunction**

**I. Introduction**

In its earlier motion to vacate the clerk's default [Dkt. 66], Defendant Best Us Toys ("Defendant") introduced certain procedural defects with Plaintiff's case, at least with respect to Defendant, which justified vacating the extent default. For the same, and additional reasons, the Court should dissolve the preliminary injunction that is currently afflicting Defendants' accounts. Plaintiff's elected form of service of process, here, is not compatible with international agreement, and thus not proper under Rule 4(f)(3) and, moreover, Plaintiff was not successful in effecting service of process upon Defendant in that fashion anyway. More substantively, Defendant highlights vulnerabilities with Plaintiff's purported patent rights, and the harmless character of Defendant's own product, which vitiate any likelihood of success on the merits of Plaintiff's claims. Relief under Rule 65 is extraordinary, and in light of Defendant's challenges hereunder Plaintiff does not carry the burden of persuasion.

**II. Argument**

    **a. Legal standard**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v.

Armstrong, 520 U.S. 968, 972 (1997).  Further, the preliminary injunction should also be tailored to the violation.  Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (holding that a court issuing a preliminary injunction must tailor it so that it is not overly broad).

In order to properly obtain a preliminary injunction, Plaintiff must have demonstrated (1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest.  Mader v. Union Twp., 2021 WL 1540517 at *3 (W.D. Pa. Apr. 20, 2021).

To establish a substantial likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims *and* that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability.  Mylan Institutional LLC v. Aurobindo Pharma Ltd., 857 F.3d 858 (Fed. Cir. 2017).  Although a statutory presumption of validity attached to an issued patent, that presumption "does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity."  Sprinturf, Inc. v. Sw. Recreational Indus., Inc., 277 F. Supp. 2d 508, 513 (E.D. Pa. 2003).  A party challenging a patent "need not make out a case of actual invalidity" in resisting a preliminary injunction; instead, a showing of vulnerability defeats the statutory presumption and the plaintiff's likelihood of success.  Id.; U-Fuel, Inc. (NV) v. Highland Tank & Mfg. Co., 228 F. Supp. 2d 597, 602 (E.D. Pa. 2002) ("in resisting a preliminary injunction ... [defendants] need not make out a case of actual invalidity.  Vulnerability is the issue at the preliminary injunction stage").

b. **The preliminary injunction and asset restraint should be dissolved and lifted because Plaintiff has not established this Court's personal jurisdiction over Defendants**.

Every Defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed. R. Civ. P. 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant and "actual notice by itself is not enough to establish personal jurisdiction over a person in the absence of valid service of process." Thompson v. Mattleman, Greenberg, Shmerelson, Weinroth & Miller, 1995 WL 321898 at *5 (E.D. Pa. May 26, 1995); *see also* Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53, 56-57 (3d Cir. 1986) (holding that failure to meet requirements of mail service as provided in Federal Rule of Civil Procedure 4 deprived court of personal jurisdiction over third-party defendant even when that third-party defendant had actual notice of action).

A court does not have the power to order injunctive relief against a person without *in personam* jurisdiction. *See*, Erie CPR v. PA Dep't of Transportation, 2018 WL 2766107 at *3 (W.D. Pa. June 8, 2018), *citing*, Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Personal jurisdiction…is an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication."); Adv. Tech. Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant"); Enters. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 470 (5th Cir. 1985) ("[A] district Court has no power to grant an interlocutory or final injunction against a party it has not acquired valid jurisdiction"). However, a court cannot properly exercise jurisdiction over a defendant that is not properly served. Kwolek v. United States, 2011 WL 1100077 (W.D. Pa. Mar. 24, 2011) ("This Court would have acquired personal jurisdiction over Respondent only if

Respondent was properly served"); Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("Service of process…is fundamental to any procedural imposition on a named defendant. In the absence of service of process…a court ordinarily may not exercise power over a party the complaint names as defendant").

On November 18, 2021, the Court granted Plaintiff's request for leave to serve the defendants via e-mail or via website publication. [Dkt. 17]. Plaintiff's counsel certified that on November 24, 2021, he "attempted to accomplish alternative service of 'all papers of record' on all the Defendants" and that as of November 24, 2021, "all Defendants were confirmed served." [Dkt. 20]. However, Defendant's email accounts did not receive such summons email. [Dkt. 66-3 ¶ 6]. Plaintiff thus failed to effect service of process as provided under the TRO and as Plaintiff certified. [Dkts. 17, 20]. Absent proper service of process, this Court has no jurisdiction over Defendant, and the entry of the preliminary injunction was improper and should be dissolved. Conrad v. De Lasalle, 2021 WL 5864062 (D.N.J. Dec. 10, 2021) (denying injunctive relief where there had not been proper service); GDS Int'l, LLC v. CalgaRIG Corp., 2017 WL 5127221 at *1 (S.D. Tex. Jan. 26, 2017) (denying preliminary injunction where foreign defendant had not been served with process); *See also*, 3M Co. v. Christian Invs. LLC, 2011 WL 3678144 at *2 (E.D. Va. Aug. 19, 2011) ("it is premature to convert the temporary restraining order into a preliminary injunction against all defendants because 3M has not completed service of process on all non-domain-name defendants"); Schuh v. Michigan Dep't of Corr., 2010 WL 3648876 at *2 (W.D. Mich. July 26, 2010), *report and recommendation adopted*, No. 2010 WL 3655654 (W.D. Mich. Sept. 16, 2010) ("When a preliminary injunction is sought under Rule 65(a), service of the summons and the complaint is required."); Carty v. Rhode Island Dep't of Corr., 198 F.R.D. 18, 20 (D.R.I. 2000) ("When an injunction is sought, service of the summons and the complaint is required. It is well settled that without service of process, this Court has no jurisdiction over the named defendants. Personal jurisdiction is established either by proper service

of process, or by the defendant's waiver of any defect in the service of process."); R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 958 (4th Cir.1999) (service of process is a prerequisite to the issuance of an enforceable preliminary injunction); Easterling v. Rice, 2019 WL 1338712 at *1 (S.D. Ohio Mar. 25, 2019); Hightower v. Thompson, 2016 WL 5422061 at *7 (E.D. Ky. Sept. 27, 2016); Carter v. Archdale Police Dep't, 2013 WL 4505394 at *1 (M.D.N.C. Aug. 22, 2013), report and recommendation adopted, 2013 WL 4832251 (M.D.N.C. Sept. 10, 2013). Because Plaintiff did not effect service of process, even via electronic means, the requirements of Rule 65 are not met, and the preliminary injunction is misapplied.

### c. Electronic service of process, under the circumstances, was nevertheless invalid under the Hague Convention.

   *i. The Hague Convention is an International Agreement that, where applicable, limits court-ordered methods of service under Fed R. Civ. P. 4(f)(3).*

Rule 4(f) governs service of process to an individual and provides that "an individual … may be served at a place not within any judicial district of the United States…by other means *not prohibited by international agreement*, as the court orders." Fed. R. Civ. P. 4(f)(3) (emphasis added). The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention") is such an international agreement as stated in Rule 4(f)(3). [Dkt. 66-1]. The Supreme Court, Federal Circuit Courts, and District Courts had repeatedly and uniformly held that the Hague Convention, where applicable, limits court-ordered methods of service under Rule 4(f)(3) and compliance with the Hague Convention is mandatory wherever it applies. Water Splash Inc. v. Menon, 137 S.Ct. 1504, 1507 (2017)( "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service wherever it applies."); Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988)("[C]ompliance with the Convention is mandatory in all cases to

which it applies."); Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (Reviewing method of service under Rule 4(f)(3) only after deciding that the Hague Convention does not prohibit the method, and holding "[b]ecause service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies); Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention ..."); Ackermann v. Levine, 788 F.2d 830, 838 (2nd Cir. 1986) ("Service of process must satisfy both the statute under which service is effectuated and constitutional due process. The statutory prong is governed principally by the Hague Convention."); Graphic Styles/Styles Int'l LLC v. Men's Wear Creations, 99 F. Supp. 3d 519, 524 (E.D. Pa. 2015) (relying on the notes to Rule 4(f) to reject service by email without a showing of circumstances to permit it, such as the failure of the foreign country's Central Authority to effect service within a six-month period); Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 331, 331-332 (N.Y.S.D. 2015) (analyzing Rule 4(f)(3) service in light of the requirement of the Hague Convention); Richmond Techs., Inc. v. Aumtech Bus. Sols., 2011 WL 2607158 at *12 (N.D. Cal. July 1, 2011) ("The question in this case is whether service of the Indian Defendants by substituted service on their attorney under Rule 4(f)(3) comports with the Hague Convention.").

More importantly, as a ratified treaty, the Hague Convention's application to Rule 4(f)(3) is required by the U.S. Constitution. U.S. Const. Art. VI, cl. 2; *See also,* Ackermann v. Levine, 788 F.2d 830, 838 (2nd Cir. 1986) ("As a ratified treaty, the Convention is of course the supreme law of the land."). In contrast, where the Hague Convention does *not* apply, courts have held that service of process via publication and email were sufficient. *See e.g.*, Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D. N.Y. 2003) (holding that service of process by publication was allowed, disregarding the Hague Convention requirements as Afghanistan was not a signatory thereto); In re

Int'l Telemedia Assocs., Inc., 245 B.R. 713 (Bankr. N.D. Ga. 2000) (holding service of process by email allowed and the Hague Convention requirements inapplicable as defendants had no known address).

                *ii. The Hague Convention is applicable to the Defendants' Service of process.*

The Hague Convention applies only when certain conditions are met. First, both the origination State and the destination State of the document must be contracting states to the Hague Convention. *See*, Elobied v. Baylock, 299 F.R.D. 105, 107 (E.D. Pa. 2014) (applying the Hague convention for service in Switzerland because both the United States and Switzerland are signatories to the Hague Convention); Int'l Controls Corp. v. Vesco, 593 F.2d 166, 178 (2nd Cir. 1979) (holding the Hague Convention not applicable as the destination State Bahamas was not a signatory). Second, there must be occasion to transmit a judicial or extrajudicial document for service abroad. Third, the defendant's address must be known. *See*, the Hague Convention, Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known.").

For Defendant, all conditions are met. First, both the United States and China are signatories to the Hague Convention. [Dkt. 66-1]. Second, there was occasion to transmit a judicial document for service abroad because Defendant has no place of business or agent receiving process in the United States. [Dkt. 66-3 ¶ 3]. Third, the Defendants' addresses were on their website and made known to Plaintiff prior to it attempting to effect services of process. Id. at ¶ 4. This address was also valid and authentic, and any mail bearing the address can successfully reach the Defendant. Id. at ¶ 5. In fact, Defendant receives return packages and other correspondence in the address in the normal course of business and regularly. Id. The Hague Convention thus applies to Plaintiff's attempt to serve Defendant with process in this action.

> *iii. The Hague Convention prohibits Plaintiff's method of service of process.*

The Hague Convention enumerates several permitted methods of service and prohibits all which are not enumerated. The Supreme Court and several Circuits have repeatedly confirmed this reading. In Water Splash Inc. and Volkswagenwerk, the Supreme Court stated that "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." Water Splash Inc., at 1507; Volkswagenwerk, at 699. It also states that "compliance with the [Hague] Convention is mandatory in all cases to which it applies." Volkswagenwerk, at 705. The Second Circuit and Ninth Circuit also have followed the rule that the method of service abroad must be permitted under a specific article of the Hague Convention. *See*, Ackermann (holding service of process by registered mail valid only after finding that Hague Convention Article 8 and Article 10 specifically permitted it); Brockmeyer (holding service of process by mail valid only after finding Hague Convention article 10(a) specifically permitted it); *see also* Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co., Inc., 2019 WL 7049504 at *4 (W.D. Pa. Dec. 23, 2019) (holding that in light of the country's article 10 objections, "the Court cannot conclude that Turkey has consented to service by means not listed in Article 10, including email"); Graphic Styles/Styles Int'l LLC v. Men's Wear Creations, 99 F. Supp. 3d 519, 523 n. 3 (E.D. Pa. 2015) (noting that "[g]iven that Article 10(a) does not permit service by 'postal channels' it cannot be stretched to permit service by e-mail").

Plaintiff cannot identify which specific article of the Hague Convention permits its service of process by a combination of website publication and email notice. Specifically, the Hague Convention permits only the following methods of service, consisting of service by central authority (Article 2-7), by diplomatic and consular agents (Article 8-9), by mail or through judicial official of the State of destination if the destination State does not object (Article 10), by methods allowed by other international agreement (Article 11), and by other means as allowed by the internal laws of the

destination State (Article 19). [Dkt. 66-1]; *See also*, Water Splash Inc., at 1508 (reviewing the permitted methods of service).

In the present case, service by e-mail or publication is not permitted by any enumerated method of service under the Hague Convention. Specifically, Plaintiff's method of service does not fall under Article 11 because U.S. and China do not otherwise have a treaty on the service of process. The method of service also does not fall under Article 19, as China's internal laws prohibit service by email or website publication unless a plaintiff has exhausted other means of service. [Dkt. 66-2] (Excerpts of Civil Procedural Law of the People's Republic of China (Amended in 2017), including relevant Articles 87 and 92, is published and translated by Wolters Kluwer). Plaintiff's method of service also clearly does not fall under Article 2-9 of the Hague Convention (*i.e.*, service by central authority or by consular agents). [Dkt. 66-1]; [Dkt. 66-2]. Because Plaintiff's method of service was not *permitted* by the Hague Convention, it was thus *prohibited* by the Hague Convention and consequently insufficient under Rule 4(f)(3).

### d. Plaintiff cannot show a reasonable likelihood of success on the merits because the '128 patent is vulnerable to being invalidated.

Plaintiff has failed to meet the burden of proving it has a reasonable likelihood of success on the merits because there are substantial questions regarding the validity of the '128 patent. Defendant's burden is merely to show 'vulnerability' of the patent at the preliminary injunction stage - not to establish the patent's invalidity. Sprinturf, Inc, 277 F. Supp. 2d at 602. Section 103(a) precludes a patent's issuance when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a while would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on the underlying factual inquiries including: (1) the scope and content of the prior art, (2) the differences

between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non–obviousness, such as commercial success, long felt need, and failure of others.  Id.

Included with this response are three (3) references which demonstrate that the '128 patent was very likely obvious upon its priority date of 02/05/2019:

- Reference 1: US20180305081 (**Exhibit A**)
- Reference 2: JP2015126848 (**Exhibit B**)
- Reference 3: KR200475407 (**Exhibit C**)

The scope and context of the prior art references, included in Exhibits A-C, discloses nearly everything claimed in Claim 1 and Claim 14 of the '128 patent, as shown in **Exhibit D**.

Each cited reference discloses a storage container with an integrated mat and a receptacle with a base, side walls, and an opening with a predefined circumference that is adapted for holding one or more objects.  Additionally, all cited references disclose an integrated mat with a top and bottom surface and a first, second, third, and fourth end.  Further, Reference 1 specifically discloses the claimed storage container of claim 1 with a rim having two ends, wherein the rim is disposed along the length of the second, third, and fourth end of the integrated mat.  Additionally, Reference 1 specifically discloses the integrated mat of claim 1 that is connected to a portion of and along a predefined circumference of the opening of the receptacle by the first end along with the two ends of the rim.  Accordingly, the differences between Reference 1 and claim 1 of the '128 patent are extremely minimal as Reference 1 teaches all the limitations of Claim 1 of the '128 patent except for the draw string.  **Exhibit A.**  However, Reference 2 specifically discloses a draw string having two extremities and discloses that the free end of the sheet is processed into a string opening through which the draw string is passed.  Further, although Reference 2 does not explicitly disclose that the string opening portion runs along the entire perimeter of the sheet, it does disclose that the draw

string provides a clear benefit, as it is used for narrowing down and manipulating the position of the free end of the sheet. The level of ordinary skill in the art is relatively low because people could easily make modifications to the rim of the storage container, and a person of ordinary skill in the art would clearly recognize the benefits of running the cord around other ends of the sheet in Reference 2, so that the other ends could also be easily manipulated and narrowed in the same way as the free end of the sheet is using the draw string. As the Supreme Court has stated, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 401, 127 S. Ct. 1727, 1731 (2007). One of ordinary skill in the art would have been motivated to combine the modified draw string of Reference 2 with the storage container disclosed in Reference 1 not only because the references are from the same field, but also because of the obvious benefits that would come from adding the string to the length of the rim. A parent or guardian packing up the storage container of Reference 1 would most certainly have encountered issues with manipulating and controlling the sides of the rim so that everything on the mat can be funneled back into the storage container during cleanup and adding the draw string to the rim is an obvious solution to this simple problem. *See,* KSR Int'l, 127 S. Ct. at 1742 ("any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed."); PBI Performance Prod., Inc. v. NorFab Corp., 514 F. Supp. 2d 732, 742 (E.D. Pa. 2007) (same); Abbott Lab'ys v. Sandoz, Inc., 500 F. Supp. 2d 846, 851 (N.D. Ill. 2007) (same).

  Similarly, the differences between Reference 1 and claim 14 of the '128 patent are extremely minimal as Reference 1 teaches all the limitations of Claim 14 of the '128 patent except for the draw string. **Exhibit A.** However, as already discussed, Reference 2 specifically discloses a draw string

and a person of ordinary skill in the art would be motivated to combine the draw string of Reference 2 to the storage container of Reference 1 due to the obvious benefits that the string provides.

  **e. Existing precedent rejects the requested preliminary injunction.**

The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Third Circuit, which noted that Grupo Mexicano held that "an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed." Karpov v. Karpov, 555 F. App'x 146, 147 n.2 (3d Cir. 2014); Akers v. Akers, 2015 WL 4601155 at *2 (E.D. Pa. July 31, 2015) ("A federal court has no authority generally to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim."); *see also* Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 11, 117 n.8 (2d Cir. 2007) *(*"federal courts lack power to issue . . . [i]njunctions that prohibit a party from transferring assets pending resolution of an action."); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief. Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). In other words, "a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted a ***cognizable equitable claim***, has demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief, and has shown that the requested interim relief is a reasonable measure to preserve the status quo in aid of the

ultimate equitable relief claimed." Akers, 2015 WL 4601155 at *2. (internal citations omitted) (emphasis added).

The instant Complaint does not assert an equitable claim; rather, it pleads damages for a patent infringement action. The patent damages Plaintiff claims are legal, not equitable, and thus afford no grounds for a pre-judgement asset freeze. Further, Plaintiff does not have a lien or equitable interest in any real or personal property and/or other assets of Defendant it seeks to have frozen, and therefore an asset freeze is completely inappropriate. NVR, Inc. v. Majestic Hills, L.L.C., 2019 WL 4673225 at *5 (W.D. Pa. Sept. 25, 2019) ("In short, because this Court does not have the authority to enter a preliminary injunction freezing assets in an action for damages where no lien or equitable interest in the assets is claimed, NVR's motion is denied."); *See* Novatek Corp. v. Mallet, 324 F. Supp. 3d 560, 566 (E.D. Pa. 2018) ("Under the circumstances, we conclude that even if Novatek has proven the elements for a preliminary injunction ..., Novatek asks for equitable relief this court has no power to grant."); Wallace v. Powell, 2014 WL 12638031 at *2 (M.D. Pa. Oct. 21, 2014) ("Under *Grupo*[,] ... absent an equitable interest in the Avoca Fee or a claim for equitable relief, Plaintiffs' claim is not sufficient to warrant entry of a freeze order. And, because Plaintiffs have not identified an equitable basis upon which the prejudgment freeze sought here can be granted, the Supreme Court's decision in *Grupo* ...forecloses Plaintiffs' request for a preliminary injunction."); CNG Int'l v. Power Partners Int'l, Inc., 2006 WL 8457723 at *1 (W.D. Pa. Jan. 31, 2006) ("Plaintiffs make no allegation that they have an equitable claim to any of the assets defendant holds, or might obtain under the California judgment. Plaintiffs' arguments and authorities are simply unavailing in the face of controlling Supreme Court precedent."). Plaintiff's injunction seeks solely to secure its interest in a possible, unlikely, future award of monetary damages, which is improper. Akers, 2015 WL 4601155 at *2 ("A federal court has no authority generally to freeze a

defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim.") (citation omitted).

Plaintiff attempts to salvage this argument by requesting an equitable remedy of an accounting of Defendant's profits, [Dkt. 7-6 p. 5] however, disgorgement of Defendants' profits has not been a remedy for utility patent infringement since 1946.  *See*, Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 506 (1964) (collecting cases); SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 807 F.3d 1311, 1326 (Fed. Cir. 2015) (en banc), *rev'd on other grounds*, 137 S. Ct. 954 (2017) ("in the Patent Act of 1946, Congress eliminated accounting of profits as a remedy for patent infringement (except for design patents)"); Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1310 n.1 (Fed. Cir. 2013) (en banc) ("An infringer's profits are, of course, no longer an available remedy for the infringement of a utility patent."); *see generally*, 7 Chisum on Patents § 20.02 (2020).  Accordingly, the request for Defendant's profits is inapplicable and the instant action does not assert an equitable claim, but rather pleads legal remedies for monetary damages, thus the asset freeze is improper. see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) ("a district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed.").

f. **The asset restraint is inappropriate regardless of whether federal or state law is applied.**

With the obvious issues of requesting a prejudgment asset restraint for monetary damages, Plaintiff attempts to bring a duplicative, albeit futile request and by asserting that "[u]nder Pennsylvania law, this Court may issue a prejudgment asset restraint where Plaintiff's complaint asserts a claim for money damages." [Dkt. 7-6 p. 4].  However, "the Third Circuit has held that a federal, not state, standard governs the scope of the Court's authority to issue a preliminary injunction."  Reidenbach & Assocs., LLC v. Brown, 2020 WL 2098101 at *3 (E.D. Pa. May 1, 2020);

*see,* Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989) ("We utilize a federal standard in examining requests to federal courts for preliminary injunctions."); *see also* NVR, Inc., 2019 WL 4673225 at *1 ("[T]here can be no dispute that federal law applies to the preliminary injunction standard to be applied here.").Therefore, federal law – and Grupo – is controlling in the instant case. Reidenbach, 2020 WL 2098101 at *3.

What's more, this Court has held that even if Pennsylvania law was to be applied, the result would be the same as it would not alter the holding of Grupo. NVR, Inc., 2019 WL 4673225 at *4 ("the Court adopts the reasoning of *Novatek* and finds that even if this Court could apply Pennsylvania equitable principles under *Erie*, it would not alter the holding of *Grupo*."); *see also* Reidenbach, 2020 WL 2098101 at *4 ("even if we applied Pennsylvania law, the result would be the same" as it would not alter the holding of *Grupo*.).  Accordingly, regardless of whether federal or state law is applied, Grupo is controlling, and the asset restraint is inappropriate.

**g. The asset restraint should, at a minimum, be limited to the amount necessary to secure the future relief, which is severely limited due to Plaintiff's failure to mark under 35 U.S.C. § 287**

Although courts may restrain assets to preserve an equitable remedy, the scope must be limited only to what is necessary to secure the (future) relief. Sec. & Exch. Comm'n v. Gentile, 939 F.3d 549 (3d Cir. 2019) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff.") (internal citations omitted); *see also,* Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994) ("Injunctive relief should be narrowly tailored to fit specific legal violations."); United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 489, 496-97 (4th Cir. 1999) ("This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets."); *see also*, Coley v. Vannguard Urban

Improvement Ass'n, Inc., 2016 WL 7217641, at *2 (E.D.N.Y. Dec. 13, 2016) (collecting cases) ("Based on this reasoning, most courts require a "nexus" between the injunctive relief requested and the equitable relief ultimately sought"). In other words, court must "closely tailor injunctions to the harm that they address." I.M. Wilson, Inc. v. Grichko, 2019 WL 5394113 at *4 (E.D. Pa. Oct. 22, 2019).

To qualify for an award of damages under 35 U.S.C. § 287, a patentee must first provide to the alleged infringer either constructive notice of the infringement - through a "patented" mark on the infringed product itself - or actual notice of the infringement through an "affirmative act on the part of the patentee which informs the defendant of [the] infringement." Amsted Indus., Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed.Cir.1994); *see also* 35 U.S.C. § 287(a) ("no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."). Pursuant to 35 U.S.C. § 287, "a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice" to the alleged infringing party that its actions infringe the patent." Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 906 F. Supp. 2d 399, 405 (W.D. Pa. 2012). The focus of the notification inquiry is on the actions of the patentee; the defendant's knowledge of the violation through other sources is "irrelevant." Amsted Indus., 24 F.3d at 187.

Here, Plaintiff did not provide Defendant with either constructive notice or actual notice of the infringement, and therefore Plaintiff is not entitled to any pre-suit damages. An alleged infringer challenging a patentee's compliance with § 287 bears "an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to § 287." Arctic Cat Inc. v. Bombardier Recreational Prod. Inc., 876 F.3d 1350, 1368 (Fed. Cir. 2017). This is a low bar, and the

alleged infringer need only put the patentee on notice that he sold specific unmarked products which practice the patent. Id. After review of Plaintiff's product, none of the products included any patent number, or even included the word "patent." Declaration of Brian Swift ¶ 2. At most, Plaintiff marked the packaging of the product with the term "Patent Pending," however, by its terms "section 287 is not satisfied by…marking with the words 'patent pending' or words of similar effect." Id.; Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F. Supp. 3d 222, 253 (S.D.N.Y. 2021), citing, MacPike v. Am. Honda Motor Co., 1993 WL 632261 (N.D. Fla. Oct. 1, 1993); Zadro Prod., Inc. v. Feit Elec. Co., Inc., 514 F. Supp. 3d 1209, 1215 (C.D. Cal. 2021) (A "patent pending" mark also indicates that a patent has not yet issued, and "gives one no knowledge whatsoever."); TecSec, Inc. v. Adobe Inc., 2019 WL 1233847 at *2 (E.D. Va. Mar. 14, 2019) ("TecSec's VEIL products were only marked "patent pending," which does not satisfy § 287(a)'s burden to mark."). Accordingly, Defendant had no constructive knowledge of the patent due to Plaintiff's failure to comply with section 287.

Similarly, Defendants was not made aware of the current litigation until February 28, 2022, and never received a cease-and-desist or other demand-type correspondence from Plaintiff related to the dispute prior the commencement of the lawsuit, and had no notice of the patent before the suit was filed. Declaration of Ming Zhang ¶ 3; [Dkt. 66-3 ¶ 7-9]. Plaintiff did not provide actual notice of the infringement, as they took no "affirmative act" which "inform[ed] the defendant of [the] infringement." Amsted Indus., 24 F.3d at 187. Accordingly, without providing constructive or actual notice of the infringement to Defendant, any damages recoverable by Plaintiff is limited by Section 287 to the date that Defendant received actual notice of its alleged infringement, which in this case, is the date of the Complaint.

The current case was filed November 16, 2021, and a temporary restraining order was entered just two days later on November 18, 2021. [Dkts. 3, 15]. Defendant has provided

documentary proof, including sales records of the allegedly infringing product supported by the attached declaration of Ming Zhang. Defendant has approximately $922,153.35 frozen in its account compared to a total revenue of $119.94 derived from Defendant's sales of the allegedly infringing product occurring after November 16, 2021. Zhang Decl. ¶ 4, 6. There is no basis for including amounts frozen in Defendant's account beyond $119.94. 35 U.S.C. § 287(a) ("no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."); *see also*, Klipsch Grp., Inc. v. Big Box Store Ltd., 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (reducing asset freeze upon defendants to $1,000 from $2,000,000 after defendants' documentary showing of profits earned from allegedly infringing goods). Further, Defendant has a total lifetime revenue of $104,769.01 with a net profit of $15,715 derived from Defendant's lifetime sales of the allegedly infringing product, and at the absolute most the asset restraint should be limited to their net profits. Zhang Decl. ¶ 5. Accordingly, the amount of any asset restraint on the Defendant account should be reduced to nothing, or in the alternative, the revenue from the Defendant's account's respective sales of allegedly infringing product occurring after November 16, 2021, or at the absolute most, Defendant's lifetime profits derived from sales of the allegedly infringing product.

### III. Conclusion

Plaintiff's proposed method of service of process, under the circumstances, was improper, but even assuming that it was, Plaintiff nevertheless failed to actually serve Defendant, and absent effective service the preliminary injunction cannot be applied. Moreover, Plaintiff's patent is very vulnerable to being invalidated. These facts either preclude outright or do not support the extraordinary relief afforded under Rule 65, and the preliminary injunction should be vacated in its

entirety. In the alternative, this Court should reduce the asset restraint afflicting Defendant to $119.94 to reflect the approximate amount of relief Plaintiff could possibly be entitled to.

Dated this July 18, 2022

        Respectfully Submitted,

        /s/Adam E. Urbanczyk
        Adam E. Urbanczyk
        AU LLC
        564 W. Randolph St. 2nd Floor
        Chicago, IL 60661
        (312) 715-7312
        (312) 646-2501 (fax)
        adamu@au-llc.com
        *Pro Hac Vice*
        *Counsel for Defendant*